ALBANY,
August, 1810.

DENTON
v.
NOYES.

*Vide* 8 *m.s. R. 491.*
7 *John* 278

Judgment for the demandant.

---

DENTON and others *against* JOHN NOYES.

An attorney of this court appeared for a defendant against whom a writ had been issued, but not served, and, without authority from the defendant, confessed a judgment, which was E. WILLIAMS, for the defendant, moved to set aside the judgment, and all subsequent proceedings, in this cause, for irregularity. He read an affidavit of the defendant, stating that a *fieri facias* had been issued in the above cause, which was levied on the property of the defendant, the 30th of *July* last; that he was never sued. entered up in vacation. The judgment was held regular. An appearance by an attorney of the court, without warrant, is good as to the court; and the defendant has an action against the attorney. *Aliter,* if there be any fraud, or collusion between the plaintiff's attorney and the attorney for the defendant. Or if the attorney for the defendant be not responsible, or perfectly competent to answer to his assumed client, the court will relieve against the judgment. And the court, in order to protect the plaintiff from suffering by the act of the attorney, and, at the same time, to save the defendant from injury, will let the judgment stand, but stay all proceedings, and let in the defendant to plead, if he has any defence.

by the plaintiffs, for the above, or any other demand; that he had never given to them, any power of attorney, warrant, or any other authority whatever, to appear for him; that he had never put in bail, or authorized any person to do so for him, nor endorsed any appearance upon any writ, nor in any manner, directly or indirectly, confessed or authorized the confession of any judgment in this court; that no judgment had been obtained in any term of the court, but that the same had been entered in vacation, on or about the 26th of *July* last.

*Van Buren* and *Henry*, contra, read affidavits, from which it appeared, that the plaintiffs obtained three judgments; two against the present defendant, and a third against *Samuel Edmunds*, on three several drafts, drawn by *Seth H. Noyes*, upon the defendants in the three suits, and accepted by them. The attorney of the plaintiffs, who had directions to collect the drafts, called the 24th of *November*, 1809, on *S. H. Noyes*, the drawer, and proposed certain terms for the payment of the drafts, which *Noyes* stated he was unable to comply with, and offered other terms, which the attorney not being authorized to accept, he informed the drawer, that unless the terms proposed by the plaintiffs were complied with, writs would be immediately delivered to the sheriff against all the parties. *S. H. Noyes* requested that the writs might not be served, until the answer of the plaintiffs, who resided in *New-York*, could be obtained to his proposals, and if they refused to accede to the terms, he engaged to place them in the same situation as if the writs had been served in *November* term; but the plaintiffs' attorney refused to suspend the delivery of the writs, unless some attorney of the court would stipulate for the defendants, to have the suits commenced as of *November* term. Upon this *H. L. Hosmer*, an attorney of this court, gave a written stipulation, in all the causes, by which he engaged, as attorney for the defendants, that good special bail should

be filed in the same, within twenty days after the *November* term of this court, then sitting; *Edmunds*, one of the other defendants, on being informed of this arrangement, expressed his approbation of it. *S. H. Noyes* being unable to comply with the terms of settlement proposed, the attorney of the plaintiffs called on *Hosmer* to put in special bail, pursuant to his stipulation, and *Hosmer*, as attorney for the defendants, requested that the plaintiffs' attorney, in order to save the expense of a trial, would accept common bail, and a *cognovit actionem* in all the suits, for the amount of the drafts, which had been before adjusted and agreed to by *S. H. Noyes*. The plaintiffs' attorney, on the representation of *Hosmer*, accordingly accepted common bail, and a *cognovit actionem*, in each of the causes, on the 15th of *February* last, with a stay of execution, until the 11th of *May* following; the plaintiffs' attorney, afterwards, informed *Edmunds*, one of the defendants in the other causes, that common bail had been filed and a *cognovit actionem* given, in order to put the plaintiffs in the same situation, as if the causes had been noticed for trial, at the *Albany* circuit, and *Edmunds* expressed his approbation of what had been done. Various negotiations for a settlement or security passed between *S. H. Noyes* and the plaintiffs' attorney; but the same not being carried into effect on the part of *Noyes*, the plaintiffs' attorney proceeded to enter up judgment, and served copies of the bills of costs, on *Hosmer*, as attorney of the defendants.

It did not appear from the affidavits and papers which were read, that *John Noyes*, the defendant in this cause, had taken any part in the negotiations and transactions in the business, or had himself given any authority to *Hosmer* to act as his attorney.

For the *plaintiffs*, it was contended, that where an attorney of the court takes it upon himself to appear, the court will not look further, but proceed as if the attor-

2

ney had authority, and leave the party to his action against him.* The authority of the attorney is never questioned. In the case of *Jackson* v. *Stewart*,† this court adopted the rule as laid down by Lord *Holt*, in the case reported in 1 *Salkeld.* Where an attorney undertakes to appear, the court will compel him to appear; and when he does voluntarily appear, they will presume he has authority, and will not call upon him to show it. Anciently, attorneys were appointed orally in court; but were, afterwards, appointed out of court by warrant; a parol authority is sufficient to support a judgment.‡ Warrants of attorney may be filed, at any time, *pendente lite;* or even after judgment. The want of a warrant of attorney is *aided* after verdict, or judgment by *nil dicit*, &c. by the statute of jeofails,§ and the want of it cannot be assigned for error.¶ In the case of *M'Cullough and another* v. *Guefner*,** in the *S. C.* of *Pennsylvania*, where one of two defendants only was served with process, and an attorney of the court entered an appearance for both, and a judgment was entered up afterwards against both, the appearance was held sufficient to support the judgment, so as to bind both.

The only case in which it is necessary to produce the warrant of attorney, is where a judgment is entered up on a *cognovit actionem*, pursuant to a warrant for that purpose, in vacation.††

The counsel for the *defendant* insisted, that the act of an attorney of the court was not conclusive. It ought to appear that he has authority. The act‡‡ relative to attorneys, expressly provides, " that the attorney for bringing an action shall file his warrant of attorney with the clerk of the court, where the action is depending, the same term he declares, and the attorney of the opposite party shall file his warrant the same term he appears." And that " every attorney who shall confess any judgment in any case, shall, at the time of making such confes-

ALBANY,
August, 1810.

DENTON
v.
NOYES.

* 1 *Salk.* 88. 5
*Mod.* 205. 6
*Mod.* 16. 40. 42.
1 *Keble*, 72. 89.
1 *Stra.* 693.
*Holt's Rep.* 77.
*Cro. Jac.* 695.
† *Ante*, 34.

‡ 2 *Keble*, 199.

§ *Sess.* 11. c. 32.
s. 6.
¶ *Rev. Laws*,
129. 1 *Tidd's*
*K. B. Pr.* 65, 66.
** 1 *Binney's*
*Rep.* 214.

††*Laws, sess.*24.
c. 32. s. 3.

‡‡*Sess.* 24. c. 32.
s. 6.

sion, produce his warrant for making the same, to the. court or judge, before whom he makes the confession, and the, warrant. shall be filed with the clerk of the court in which the judgment shall be entered."

The present is the case of an attorney confessing a judgment, without any writ or suit, on filing common bail, and without any warrant from the defendant. It is within the clause of the act, as to judgments· by *confession*, in vacation. It would be most dangerous, if attorneys were to be permitted to· acknowledge judgments, without the knowledge or consent of the defendants, by which all their property .might be taken ·from them ; without any other remedy than a recourse to an attorney, who might be wholly unable to make compensation for the loss and injury sustained.

KENT, Ch. J. delivered the opinion of the court.. The judgment in this case, is regular upon the record. An attorney of this court appears for the defendant to a writ which had been sued out, but not served, and he, afterwards, confesses judgment. The want of a warrant of attorney is cured, after judgment, by *the statute of amendments and jeofails.* (*Rev. Laws,* vol. 1. 129. 132.) ·If the attorney has acted without authority, the defendant has his remedy against him ; but the judgment is still regular, and the appearance entered by the·attorney, without warrant, is a good appearance, as to the court. (1 *Keble*, 89. 1 *Salk.* 86. *Comyns' Dig.* tit. *Attorney*, (B). 7.) This rule of law, though perfectly. well settled, would often· times be unjust in its operation, if it was not so restrained as to save the party, who may be affected by it, from injury. It was, therefore, wisely laid down by the K. B. in the time of Lord *Holt,* (1 *Salk.* 88.) that if the attorney for the defendant be not responsible, or perfectly competent to answer to his assumed client, they would relieve the party against the judgment, for otherwise ·a defendant might be undone. I am willing to go still. further,

and in every such case, to let the defendant in to a de-
fence to the suit. To carry our interference beyond this
point, would be forgetting that there is another party in
the cause, equally entitled to our protection.

The plaintiffs, in this case, are as innocent as the de-
fendant, and their agent, reposing upon the appearance
of the defendant, by a regular attorney of this court,
suspends the prosecution of the writ which he had taken
out, and after a delay equal to the ordinary prosecution
of the suit to judgment, accepts of a *cognovit*. If all this
proceeding is to be vacated, the plaintiffs would probably
lose their debt; as other creditors may, in the mean
time, step in and gain a preference; and from sugges-
tions made upon the argument, this application is very
possibly a struggle of subsequent creditors, striving to
gain a preference over an insolvent's estate. The plaintiffs,
and such creditors, (if such there be,) have, at least, equal
equity, and in addition to that, the plaintiffs have the le-
gal advantage. If there had been any collusion between
the plaintiffs, and the attorney for the defendant, it would
have altered the case; but there is none shown or pre-
tended, and my whole opinion proceeds on the ground,
that the plaintiffs have acted with good faith.

I am disposed, therefore, to prevent all possible injury
to the defendant, and at the same time, to save the plain-
tiffs from harm. This can be done, only, by preserving
the lien, which the plaintiffs have acquired by their judg-
ment, and by giving the defendant an opportunity to
plead, if he has any plea to make, to the merits. To
go further, is not required by any considerations of jus-
tice or policy; and it would be repugnant to the esta-
blished practice and precedents. It hink it can be shown
that the court is bound, by a series of decisions, to pre-
serve the judgment. The usual course has been to turn
the injured party over to his remedy against the attor-
ney, for the deceit; but we now disarm this practice of

DENTON
v.
NOYES.

all its severity, by not confining the party to that remedy, but allowing him to come in and plead.

By licensing attorneys, the courts recommend them to the public confidence; and if the opposite party, who has concerns with an attorney, in the business of a suit, must always, at his peril, look beyond the attorney, to his authority, it would be productive of great public inconvenience. It is not usual for an attorney to require a written warrant from his client. He is generally employed by means of some secret confidential communication. The mere fact of his appearance, is always deemed enough for the opposite party, and for the court. If his client's denial of authority is to vacate all the proceedings, the consequences would be mischievous. The imposition might be intolerable.

*Fitzherbert*, in his *N. B.* 96. (E). says, that if an attorney deceitfully appear for the defendant, and plead, and suffer the inquest to pass by default, by which the plaintiff recovers, the defendant, who was never summoned, shall have a writ of deceit against such attorney, and the writ appears in the *register*. And in the case, in 21 *Edw.* III. 45. *pl.* 64. and which is cited in the note to *F. N. B.* 95. a. it seems to have been agreed by the judges, that if one answer for another, as attorney, without any warrant, the defendant may challenge that he was not his attorney, and appeal to the record; but if judgment be rendered upon the plea of the attorney, then the only remedy of the defendant is by a writ of deceit against the attorney, to recover his damages; and ift he demandant be a party to the deceit, then he shall recover his lands also.

The same doctrine was laid down in *Allesley* v. *Colley*. (*Cro. Jac.* 695.) The court of C. B. would not relieve a party upon *audita querela*, when an attorney, without warrant from him, and without his notice, appeared for him to an action, and suffered judgment by default, upon

*non sum informatus* entered, upon which he had been taken in execution. The court said he must take his remedy, by writ of deceit, against the attorney.

The two cases already referred to from *Salkeld*, (and which are considered by Lord Chief Baron *Comyns*, as good law,) show that the rule had not been altered in the time of Lord *Holt;* and the case of *Lorymer* v. *Hollister*, which was in 12 *Geo.* I. (1 *Str.* 693.) is a very strong decision of the K. B. for there, though the writ had been taken out, as in this case, it does not appear to have been served, and the court compelled an attorney, who had, through misinformation, undertaken to appear for the defendant, without warrant or direction, to complete his appearance, so as to render the judgment, which the plaintiffs had taken by default, regular. A similar rule was afterwards granted, in the similar case of *Burnfield* v. *James*, so late as *Hil.* 6 *Geo.* II. (*Barnad. K. B.* vol. 2. p. 232.) and the same principle, though in another shape, is contained in the case of *Rex* v. *Addington*, (*Sayer*, 259.) in the year 1756; for there an attorney entered into a rule of *nisi prius*, without authority; but the court of K. B. made the rule absolute, notwithstanding; and said, that if an attorney exceeds his authority, and his client be thereby prejudiced, the attorney is liable to make satisfaction.

The supreme court of *Pennsylvania* have acted upon the same ground. In *M'Cullough* v. *Guetner*, (1 *Binney*, 214.) an attorney undertook to appear for a defendant, not summoned, and without any warrant of attorney, and the court held the appearance good. And in a subsequent case, in the same court, (1 *Binney*, 469.) an attorney undertook, without the knowledge or consent of the defendant, to revive a suit against him, after it had been, by a *non pros*, legally out of court, with the knowledge and consent of the attorney, for near two years; and the court said the act was binding, and that if the attorney had done wrong, he was answerable.

In some of the authorities referred to, it is stated that the party, for whom the attorney appeared, was never summoned or taken. In others, this fact is left in doubt, or necessarily implied. It was never made a point in any of them. The rule is laid down generally, without any distinction ; nor is there any distinction in principle, between the case of an attorney, appearing without authority, and suffering, or confessing judgment for a party, before or after that party had been served with process. The *gravamen*, as it respects the defendant, is the same in the one case as in the other ; for it consists in acting without authority, and not in acting before or after appearance. Though the cases may not seem correct, if we were to reason from first principles, yet if the rule appears to be settled, we are not at liberty to reason in that way ; and I apprehend, that long experience has demonstrated, that no real danger or inconvenience has resulted from the doctrine. An attorney, appearing without authority, either through fraud or mistake, is a case not likely to happen once in an age. There is no inducement for it ; but every inducement against it ; and when it does happen, the interference of the court, as in this case, will show, that no very serious injury can result to the party complaining ; though without the rule, another innocent party, trusting to an officer of this court, in his professional duty, might lose his whole demand, and be undone.

Against a rule, so long and so authoritatively established, there is very little to be found in the books. There are only a few solitary cases, which have never been considered as affecting or diverting this long train of decisions. In *Chivers* v. *Fenn,* (2 *Show.* 126.) the court of K. B. did set aside a judgment against bail, on the ground, that the attorney, who had appeared for them, as well as for their principal, had acted without authority. This case was in the time of *Charles* II. and it is a brief and loose report, not to be found in any

other reporter. It would seem that the attorney un-
dertook to appear on the warrant of the principal, and
this was probably shown upon the record ; for the ground
of the decision was, that the warrant of the principal for
appearance, extended not to the bail. *Gwillim*, the late
editor of *Bacon's Abr.* (vol. 1. p. 287.) questions, very
properly, the authority of this case ; and suggests that
the court would not now set aside the judgment, if the
defendant was regularly served with process, unless he
had a good defence. This case has been long and often
overruled by subsequent cases. There is also the
case of *Robson* v. *Eaton*, (1 *Term Rep.* 62.) which arose
in the K. B. since our revolution, and which, if it was
intended (as I am persuaded it was not) to overthrow
the former decisions upon this subject, and to introduce
a new rule, cannot be received here as sufficient author-
ity for that purpose. In that case, it was held, that the
payment of a debt to an attorney, who had instituted the
suit, and recovered the money, in the name of the real
creditor, but under a *forged* warrant of attorney, was no
discharge to the defendant, and he was obliged to pay
the money over again. Here both plaintiff and defend-
ant were equally innocent ; and it was inevitable, that
one of them must suffer, in the first instance, and be left
to take his chance for his remedy over ; and the court
left the hardship to fall upon the immediate victim to the
fraud, who, perhaps, if he had examined, and duly
questioned the warrant of attorney, might have traced
and detected the forgery. I cannot perceive that the
case has much bearing on the present question. The
rule appears to me to be settled upon too much author-
ity to be denied, and upon too much principle to be dis-
turbed. Without it, there could be neither safety to
suitors, nor trust in the profession.

Having thus ascertained the rule, and subjected it to
such modifications as justice required, we are of opinion,

ALBANY,
August, 1810.

DENTON
v.
NOYES.

that the motion, in the present case, to set aside the judg-ment, must be denied. But, in order that the defendant may not be injured, and to prevent abuse in practice, the court think proper to grant the following rule.

*Ordered*, that the defendant have leave, until the 1st day of *September* next, to plead the general issue, with notice of any special matter, if any there be, which could be pleaded in bar, and could not be given in evidence, under the general issue ; and in the mean time, that all further proceedings, under the judgment, be stayed on the part of the plaintiff; and in case of such plea, that the plaintiff be at liberty to change the venue to the county of *Columbia*, (if laid elsewhere,) so that the issue may be tried at the ensuing circuit, in that county. And in de-fault of such plea, that the plaintiff be at liberty to pro-ceed with his execution, under the said judgment ; but that the costs of the said suit, together with the costs of this motion, abide the further order of the court. And, it is further *ordered*, that *Hezekiah L. Hosmer*, the attor-ney for the defendant, show cause, by the first day of the next term, why an attachment should not issue against him, and that Mr. *Bloodgood*, the clerk of this court, as soon as may be, after the term, cause a copy of the affi-davit of the defendant, *John Noyes*, together with a copy of this rule, to be personally served on the said *Hezekiah L. Hosmer*.

VAN NESS, J. *dissented;* and delivered his reasons, as follows ; I consider the opinion which has just been de-livered, as not founded on any facts or circumstances pe-culiar to this case ; but the broad ground taken is, that when a judgment has been entered upon a *cognovit ac-tionem*, given by an attorney of this court, without the authority, or even knowledge of the debtor, that such judgment is regular. To this I cannot yield my assent, In assigning the reasons for my opinion, it becomes ne-

2

cessary to examine, with some particularity, the leading cases relied upon, in support of the opinion of the court.

In an anonymous case, in 1 *Keble*, p. 89. it is said, " if an attorney, without warrant, appear, this is a good appearance, as to the court, and the attorney only is liable to an action." Whether there had been a suit brought, is not stated ; nor does it appear whether the party for whom the attorney appeared, or the opposite party, questioned the regularity of the proceeding, or the authority of the attorney.

In another anonymous case in 6 *Mod. S. C.* 16. (1 *Salk.* 88.) the court are represented to have said, that " if a responsible attorney appears for another without warrant, and there is judgment, the judgment shall stand, and the party shall be put to his action against the attorney. But if the attorney be a beggar, or a suspicious character, the court will set aside the judgment; for otherwise, the defendant has no remedy, and any one may be undone by that means." Upon this case, it is to be remarked, that it does not appear whether a suit had been commenced or not. Most probably a suit had been brought. The court say they would " set aside the judgment if the attorney was a beggar or a suspicious character." What is intended by the attorney being a suspicious character, I can scarcely conjecture. One would suppose, however, that an attorney who had confessed a judgment, without the least authority, would fall within this description ; but the court, it seems, thought otherwise.

It is very certain, that the decision does not proceed upon the ground that the judgment was confessed for a debt actually due to the plaintiff; for if that were so, although the attorney might be liable to an action, yet the recovery against him would be merely nominal. For aught that appears, the plaintiff had no cause of action at all, or if he had any, it may have been for an assault and battery, or in slander. It is not to be doubted that

the only reason why so much stress is laid upon the solvency of the attorney is, because the court would not suffer the judgment to stand, unless the party affected by it had an effectual remedy to recover back the money wrongfully extorted from him by means of the judgment. I wish, also, that it may be distinctly recollected, that the principal reason, given by the court, for saying that they would set aside the judgment, if the attorney was insolvent, is, that otherwise the defendant might be ruined.

I think I shall presently show, that if a practice like the present be tolerated, the ruin of the defendant, in many cases will be equally inevitable, whether the attorney be solvent or a beggar. It appears to me most extraordinary, that the fact of the solvency or insolvency of the attorney, or his being a suspicious character or not, should have any influence upon the question. How is that question to be tried? Is an issue to be awarded, if it be disputed, or is it to be tried by affidavit? What proofs would be competent to. show the attorney to be a " suspicious character," would, I suspect, be a point of some nicety.

Another case is that of *Allesly* v. *Colley*. (*Cro. Jac.* 694, 695.) It was this; *Allesly*, the plaintiff, and an *infant*, was bound with one *Castalon* to *Colley*, the defendant, who prosecuted an original writ against him, in debt, and procured one *Legat*, an attorney, to appear for him, without warrant. Judgment was entered by *non sum informatus*, and *Allesly* (the infant) taken in execution, and he brought his *audita querela* to be discharged. The court refused his discharge, saying, he ought to take his remedy against the attorney.

Let us examine this case. Here was an appearance procured by the plaintiff himself, in the suit against the infant, knowing, of course, that the attorney had no authority; and by that means a judgment was fraudulently obtained against an infant upon a bond, and in a case, therefore, in which he had a perfect defence. Notwith-

standing all this, the court sustained the judgment. In this, as in the case in 6 *Mod.* and 1 *Salk.* no distinction was taken whether the party against whom the judgment was confessed, had merits or not. I understand my brethren would not consider themselves bound to go the full length of the case in *Cro. Jac.* and yet I venture to assert, that no essential difference can be pointed out between it and the other cases, upon whose authority this application is decided. It is important to be observed, that there *Colley* had regularly commenced a suit, before the attorney entered an appearance.

I now come to the case, which appears to me most strongly to support the decision of the court. It is that of *Longman* v. *Holliston.* (1 *Stra.* 693.) The bailiff had a writ against the defendant; and one *Stapleton,* an attorney, was employed by the bailiff, without the authority of the defendant, to appear. *Stapleton* told the plaintiff's attorney, he had ordered his agent to enter an appearance. The plaintiff's attorney delivered a declaration, and signed a judgment for want of a plea. No appearance had been filed; and the court, on application, refused to set aside the judgment, and ordered the attorney to file common bail, *nunc pro tunc,* to make the proceedings, as they are pleased to call it, " regular." It is to be regretted, that the facts in this case are not more fully stated. But it is clearly distinguishable from the present. There is not the least doubt that the writ had been duly returned and filed; and, though it is not stated in the report, it is more than probable that the writ had been served upon the defendant, and that he, therefore, knew of the pendency of the suit, but took no measures to make a defence.

These are the leading cases in support of the opinion of the court, though there are others which I do not deem it necessary to mention, as they all go to the same point. One has been cited from *Barnad. Rep.,* but he is a reporter of such doubtful authority, as not to be entitled

to much consideration, except he is supported by other cases. The rule, as deducible from all this class of cases, according to my apprehension of them, is this : where a suit has been regularly commenced, and an attorney appears for the defendant, or agrees to appear, without warrant, the plaintiff may proceed to take judgment, and the court will support such judgment, whether it be for a *bona fide* debt due to the plaintiff, or not ; and whether the defendant has a defence or not ; and the only remedy the defendant has, is an action against the attorney. The single exception to this rule appears to be when the attorney is a " beggar, or a suspicious character ;" and this exception is mentioned in but one of the cases in which the rule is recognised. But I do not find, that in any of the cases, the attorney gave a *cognovit actionem ;* and I cannot but believe, that for this reason, none of these cases apply to the case now before the court. If I have stated the *English* rule correctly, the decision just pronounced departs from it in many very important particulars.

My brethren make a distinction, where the defendant suggests that he has merits ; in such case he is allowed to plead, though the judgment is suffered to stand as security. The solvency or insolvency of the attorney is wholly disregarded, provided the judgment be for a debt due from the defendant to the plaintiff. The attorney is deemed competent, not only to appear without authority, but also to sign a *cognovit actionem,* and that whether a suit had been previously commenced or not. In all these respects, the rule now established by this court is not only different from, but, in some points, repugnant to, that which appears at one time to have prevailed in the court of king's bench.

Upon examination, I find, that the law in *England*, at one time, in relation to the binding effect of an unauthorized appearance for a defendant, was the same where a suit had been prosecuted without warrant, written or

2

verbal, for a party plaintiff.  This was so decided in the case of *Shepard and Bailey* v. *Orchard* (6 *Mod.* 40. and the cases there cited.)  Indeed, it will not be denied, that the same reasons of policy and convenience which may be urged in favour of binding defendants, who are represented by an unknown and unauthorized attorney of this court, may be urged with equal, if not greater, plausibility in favour of binding a party plaintiff under similar circumstances.  If, therefore, it can be shown that this has been solemnly decided, in a modern case, not to be the law, I shall, at least, be excused, if not justified, for dissenting, on this occasion, from the opinion of my brethren.

ALBANY,
August, 1810.

DENTON
v.
NOYES.

At common law, every person was obliged to appear, and prosecute in proper person.  By the king's paten's they might appear by attorney; and now, under various statutes, all suitors in civil causes are permitted to appear by attorney.  This was the privilege of the suitor, and was intended exclusively for his benefit and convenience.  But how it ever happened, that the courts in *England* allowed an attorney to appear for a person who had not employed him, and thereby enable the plaintiff to bind the person and estate of the defendant, without even the shadow of authority, is, I confess, to me inconceivable.  I have not had an opportunity to examine, but I verily believe, that the whole of this practice originated in some ancient rule of court, and that it never had a foundation in the principles of common law.  If the law is settled, as my brethren suppose it is, I should hold myself, however reluctantly, bound to submit to it.  But I think I shall be able to show, that the weight of authority is against the opinion of the court, or, at least, that the law is so far doubtful, as to leave us at liberty to establish a rule for ourselves.

In *quare impedit*, (*T. B.* 38 *Edw.* III. 8.) an attorney appeared, and demanded the plaintiff, and nonsuited him, and obtained a writ to the bishop against him; and after, because it appeared he had no warrant, he

was committed to prison, till advisement what should be done with him, and the judgment and execution were repealed, and a writ of appeal awarded to the bishop.

In the case of *Chevers, Vicecom.* v. *Fenn and others,* (2 *Show.* 161.) there were several suits in debt upon a bail-bond. The principal gave a warrant of attorney to appear for himself, and his bail being his neighbours, he ordered his attorney to appear for them too, which he did. Judgment was entered against all, for want of a plea. But, upon motion, the judgment was set aside, as to the bail ; the principal's order not being a warrant to appear for more than himself.

This is a case clearly and intelligibly reported, and in the principal fact, bears a very striking resemblance to the present. In the case of *Gibson* v. *Bishop of Bath and. others,* (*Barnes,* 239.) issue was joined between the parties, and, afterwards, judgment was entered at the foot of the issue, for the plaintiff by *cognovit, relicta verificatione, &c.* by virtue of a warrant of attorney for that purpose, pretended to be executed by *Bond,* one of the defendants ; the validity of which warrant of attorney being contested, an issue was directed by the court, to try whether the same was duly executed by *Bond* or not ; and upon the trial, the jury found it to be a forgery ; whereupon the court ordered the judgment, entered by virtue of the warrant of attorney, to be set aside. There the plaintiff did not appear to be in fault, as he was not charged with having committed the forgery. The proceedings on his part were as regular, as in any of the cases cited to support the present judgment. It is to be noted also, that the attorney, who had been regularly employed by the defendant, in this cause, does not appear to have been deemed competent to give a *cognovit actionem;* otherwise, the judgment would not have been set aside. The warrant of attorney was, however, a forgery. I shall take notice of this fact presently.

But a case of a more recent date, and which proves, most satisfactorily, that the notion which prevailed in

Lord *Holt's* time, and by which I think the court of king's bench were, for some time after, misled, is now exploded, is that of *Robson* v. *Eaton.* (1 *Term Rep.* 62.) That was an action for money had and received. It was pleaded, that after making of the promises mentioned in the declaration, the plaintiff, by *William Hodgson*, his attorney, impleaded the defendant in the court of common pleas for the same cause of action. That in the course of the suit, the defendant, by an order f the court, paid into court 62*l.* ; and that the plaintiff's said attorney took the same out of court. The plaintiff replied, that he never retained the said *W. Hodgson* to implead the defendant, or empowered him to receive the money. To this replication there was a rejoinder, and to the rejoinder a demurrer. It was admitted, that both parties, in this case, were innocent of fraud. The fact was, that one *Davis*, having procured a forged warrant of attorney, went to *Hodgson*, and commissioned him to bring the suit in the common pleas. *Hodgson* accordingly brought the suit, and the defendant, as the action was in the plaintiff's name, and as it appeared upon the record, that *W. Hodgson* was the attorney for the plaintiff, paid the money into court, which *Hodgson* took out, and paid it over to *Davis*, who had not since been heard of. The court say " there can be no doubt in this case. The attorney who trusted to the warrant of attorney is liable, and *Davis*, who committed the forgery, is liable to him. The record of the common pleas amounts to no more than this, that the attorney prosecuted the suit in the plaintiff's name ; but it does not state the authority given to him by the plaintiff for so doing."

It may be said, in answer to this case, that the attorney appeared for the plaintiff ; and, that the warrant of attorney, as in the case before mentioned, (*Gibson* v. *Bishop of Bath and others,*) was a forgery. But this does not alter the case. It has, I think, been fully shown, that the supposed rule in *England* applies as well when there is an appearance for a plaintiff, as a defendant.

" It is the course of the king's bench," says Lord *Holt*, " when an attorney takes upon himself to appear, to look no further ; but to proceed as if the attorney had sufficient authority, and leave the party to his remedy against him." As to the warrant of attorney being a forgery, that, surely, can make no difference. It is as if there was no warrant or other authority, and that is precisely what this defendant complains of. The court, in deciding the case of *Robson* v. *Eaton*, proceed upon the ground that an attorney cannot bind a party for whom he appears, unless he was previously retained ; and for that reason, the defendant was compelled to pay the debt a second time. It is idle to attempt to make a distinction between this case and the one now before us. It undeniably overrules all the cases relied upon in support of the opinion of the court ; and restores the law to what it formerly was, and ever ought to have been.

During this term, we have decided upon an application which, in principle, is the same as that now under consideration. We were applied to to discharge a party from an attachment, for not paying the costs of an ejectment suit, in which he had been made a lessor of the plaintiff, by an attorney of this court, without his consent.* We discharged him, upon these facts, without the least hesitation ; all of us being struck with the flagrant injustice of subjecting him to the payment of the costs of a suit which he had never authorized to be prosecuted in his name. If we were right in that case, of which I have no doubt, the court must be wrong in this ; for it is impossible for both decisions to be right.

I have looked, though very cursorily, into some of the writers on the *French* and civil law, with a view of discovering to what extent a procurator, between whose powers and duties, and those of the attorneys of this court, there is a pretty strict analogy, could bind his clients. *Pothier* (tit. *Con. de Mandat*, no. 130.) is very full on the point. In speaking of the *procureur*, who is, I think, an attorney at law, in the most literal

* See *The People* v. *Bradt*, *post*, p. 318.

sense,(a) expresses himself to this effect : " a procureur, or attorney, who exceeds his power, and, with much greater reason, he who has no power at all, cannot bind him in whose name he has transacted any affair. The attorney who has acted for me without my order, or who has made any tender or declaration, in a course of justice, which I have not given him an order to make, cannot bind me," &c. " Therefore," he continues, " whether it is in the life of the attorney, or after his death, that the matter which he has done in my name be objected to, I may say, it is without my order, and disavow it." And then, upon the same principle upon which the decision in the case of *Robson* v. *Eaton* is founded, he adds, " that the attorney who falsely pretended to have a power from me, is bound to the other party, against whom he has used it, for all damages," &c. The same general rule will also be found in *Perezius*. (*Institut. Imperial. lib.* 4. tit. 10.)

After this review of the cases, I should suppose it would be readily conceded, that this question is not so settled, as to preclude us from establishing such a rule, as shall be deemed the most just, and the least objectionable. If this were a new point, there could not, I think, be a difference of opinion, what that rule ought to be. Gene-

(a) There seems to be a distinction between the *procurator ad litem* of the *Roman* law, and our *attorney at law*. The employment or business of the former was strictly of a private nature, and might be exercised by any person whom the party thought proper to appoint. He was a mere agent or mandatary, responsible and amenable only to his employer. But by the *English* law, the office of an attorney partakes of a *public* nature. He is an *officer* of the court in which he is *licensed* to appear; and as such is entitled to certain privileges, and is bound, under the sanction of an oath, to act with honesty and fidelity. Before he is admitted, the court must be satisfied that he is of good moral character, and has sufficient learning and ability; and he is always subject to the censure and animadversion of the judges, who will displace and punish him, if he is guilty of any malpractice. A *Roman procurator*, any more than an attorney *in fact*, or any other mandatary, was not subject to the control or censure of the court, before whom he appeared. But if he did not enrol his mandate or warrant of attorney, or was not appointed by his client in open court, he was bound to give security, that his client would ratify his proceedings. (*Justin. Inst. lib.* 4. tit. 10, & 11. et *Vinn. Comment.* 3 *Bl. Comm.* 25, 26.)

rally speaking, one man cannot bind another, without an express authority for that purpose. It would be an unpardonable waste of time to adduce authorities in support of so plain a principle. I know of no reason why an attorney of this court should be exempted from the operation of this principle. If it be once understood to be the law of the land, that every attorney of this court may appear for any man in the community, whether he be sued or not, and confess a valid judgment against him, without his knowledge or consent, whereby his person may be taken in execution, or his property swept away, without giving him an opportunity to prepare for the shock, I speak with all due deference, I tremble for the consequences. The whole profession, instead of being what it yet is, honoured and respected, will, I fear, soon be considered, in fact, to be what a part has already been called, " *hostes humani generis.*"

Let us consider, for a moment, to what the decision of the court may lead. A man perfectly solvent, and in good credit, who is liable to an action, but entitled to all the delay which the rules of the court allow, is subjected, without a moment's warning, to imprisonment. His property is encumbered, and exposed to be sacrificed. His credit is destroyed; and the result is inevitable ruin. Instead of providing for his meritorious and honorary creditors, such, for instance, as endorsors, the very creditor who has caused his ruin, acquires an unjust preference.

These are some of the evils which I anticipate from the present decision; and all of them might be forcibly illustrated, had I not already said much more on this subject than I, at first, intended. For the injuries which may be committed, by the toleration of this practice, what is the remedy proposed? The attorney is liable to be punished, and the ruined debtor may commence an action against him ! I will not dwell upon this part of the argument; let me, however, be permitted to add, that an attorney who is base enough to confess a judg=

ment against another, knowingly, and without the least
shadow of authority, will very easily, by flight or fraud,
elude both the power of the court to punish him, and
the payment of any damages that may be recovered
against him. The court has confessedly departed from
the rule which at one time seems to have prevailed in
*England.* Why stop half way? If it be allowable to
depart from the rule at all, why not adopt the natural
safe one, that for which I contend, and which is con-
formable to the general rules of law, in analogous cases?

But admitting, for a moment, that I am wrong in
what I have hitherto said, there is another ground why
these judgments ought now to stand, upon which I rely
with the greatest confidence. By our statute, *sess.* 24.
c. 32 s. 2. it is provided, that " every attorney who shall
confess any judgment, in any case, shall, at the time of
making such confession, produce his warrant for making
the same, to the court, or judge before whom he makes
the confession, and the warrant shall then be filed with
the clerk of the court, in which the judgment shall be
entered."

It is said, that the statute does not apply to confes-
sions given after suit brought. This I deny. I have
looked, in vain, for the authority upon which this is urged.
The words of the act are positive and express ; " every
attorney who shall confess *any judgment, in any case,*"
&c. But suppose that I am wrong in this also, has
there been a suit brought? No writ has actually been
issued, served or filed. A person who calls himself the
agent of the plaintiff, (not an attorney of this court,)
makes out the writs, and then accepts an agreement from
the attorney, who takes upon himself to represent this
defendant, to enter special bail. After this follow inef-
fectual attempts to settle with the principal debtor, *S. H.*
*Noyes ;* and then this same attorney, without the privity
of this defendant, confesses judgment. The declaration,
plea, and common bail-piece, and record of judgment,

are all filed at the same moment. There was no commencement of an action. Suppose no confession of judgment had been given, and the plaintiffs had actually commenced a suit at the time the judgment was entered, and not before, and that the debt had then been barred by the statute of limitations, will it be pretended that the mere filling up of the writs would have taken the demand out of the statute? I am at a loss to conceive of a case more manifestly within both the letter and spirit of the provisions of the act to which I refer. To suffer an attorney to appear without authority, is going beyond what the law, according to my view of it, will warrant; but to sanction a judgment confessed by him is repealing the statute.

This part of my opinion applies equally to the two judgments against *Edmunds*. I think, therefore, that both the judgments against *John Noyes* and *Samuel Edmunds* ought to be set aside.

                                    Motion denied.