The opinion of the court was delivered by
Duncan, J.
There was an objection, which if it'is support ed, cuts up this action by the roots. It is. that the 5 dollars required by the act of incorporation to be paid on each share, not being paid at the -fime of subscription, vitiates the subscription in to-to, and for this the Hibernia Turnpike Company v. Henderson, decided by this court, is relied on. But that case is distinguishable from the present in this most important feature, that here the plaintiff in error was one of the commissioners, who had authority to receive the 5 dollars when he made the subscription. It would be a ridiculous ceremony for him to take his money out of one pocket and put it in the other. Wherever the hand which is to pay, is the hand which is to receive, that is payment and satisfaction, as between the parties, even at law. Griffith v. Chew’s Excutors, 8 Serg. & Rawle, 71. And in the case Highland Turnpike v. M'Kean, 11 Johns. 98, this very point was decided. The first payment of a commissioner subscribing was held, in judgment of law, in-his own hands for the use of the company, from the moment of his subscription. I am, therefore, of opinion, that the plaintiff in error was accountable to the company for the amount of his subscription.
The exception to the charge, on account of its vagueness, as to the effect of the recital in the act of incorporation, is altogether groundless. The plaintiff in error has no just reason to complain. The law should have been stated more strongly against him than it was. The recital in the charter was prima facie evidence, accompanied by the evidence that Grayble subscribed 3 shares in the books prepared according to the direction of the act.
But the admission of George Lashells as a witness was erroneous. He had an immediate and direct interest in the funds of the company. These funds would have been increased by the recovery in this aetion. It was a certain benefit. There was a legal, fixed interest at the time of the trial. G. Lashells was a stock holder when the action was brought. He was then clearly interested. Had the transfer of his stock to the Gettysburg Bank, *274 been absolute and unconditional, his interest would have been divested! But it appears he sold it to the bank, and guaranteed its par value. If it did not sell at par he was to make up the deficiency. Now, the deficiency, when he was received as a witness, was 50 per cent. 5 it is chimerical to say, that at some 'future day it might rise again to par. How did he then stand ? At the mercy of the bank, who might have sold instantly, and then received from him by his express stipulation the deficiency. Did not then the the subscription of Grayble add to the funds of the company, and would not the value of the stock be increased by the recovery in this action as far as it went? The quantity of interest can make no difference. A grain of mustard seed would exclude, and it is a general rule of evidence, that if the effect of the witness’s testimony would be to create or increase a fund in which he would be entitled to participate, he is incompetent. 1 Phillips Evid. 50. A grantor warranting the title to land is incompetent on the trial of an ejectment for the land, A stock holder in' a public company transferring his stock with a guarantee of its par value at all times, retains still an interest in every fund which would tend to keep up its value. This subscription of Grayble formed a part of the fund* When he transferred it, if that was not recovered, by so much as its proportion would bear to his stock, would its real value be less,. My opinion, without perplexing the case with numerous references, and nice distinctions between bias and interest, is bottomed on the broad and inflexible rule of evidence, that here was an immediate interest in the witness when he gave his evidence to increase the fund of the company, and that a recovery in this action would have increased that fund, and consequently, that he was interested and incompetent.
Judgment reversed and venire facias de novo awarded.