## CAMPBELL *against* KENT.

A judgment confessed by an attorney at law, by authority of a warrant from the wife of an absent debtor, is void as to subsequent judgment-creditors, even though such judgment were ratified and confirmed by the debtor, after other judgments were entered against him.

Whatever may be done upon application to the court, by a party, to be relieved from a void or voidable judgment, the same result may be obtained upon the application of a *bona fide* creditor of such party.

WRIT of error to the Common Pleas of *Green* county.

This was an amicable action, in which *Benjamin Campbell* was plaintiff, and *Jesse Kent, Uriah B. Eagen,* and *Reuben Mickle,* were defendants: the issue joined was upon the fact, whether a certain judgment in the Common Pleas of *Green* county, at the suit of the present defendants against *Samuel Mickle,* was a good and valid judgment or otherwise. *Jesse Kent, Uriah B. Eagen,* and *Reuben Mickle,* were the endorsers to the Bank of *Brownsville,* of a note of *Samuel Mickle* for three hundred dollars. *Jesse Kent* and Mr. *Buchanan,* an attorney at law, went to the house of *Samuel Mickle,* who had been absent six or seven days, to get his wife to authorize Mr. *Buchanan* to confess a judgment against her husband, in favor of *Kent, Eagen,* and *R. Mickle,* his endorsers. Mr. *Buchanan* told her to consult her brothers about it; which she did: they replied, that they would not undertake to advise her, but supposed Mr. *Buchanan* would not desire her to do wrong. She then signed the following paper:

*To Andrew Buchanan, Esquire:*

My husband, *Samuel Mickle,* is indebted unto *Jesse Kent, Uriah B. Eagen,* and *Reuben Mickle,* as his security for money for which they are bound. You will therefore please to adopt any such means as you may deem advantageous to my said husband, and secure his friends above named; either by confessing judgment against him in their favor, or otherwise, as may seem to you to save costs, and be most for the interest of my said husband. The sum for which they are bound, is three hundred dollars.

March 20th, 1830.

In pursuance of this authority, *Andrew Buchanan,* Esquire, on the 20th of March, 1830, appeared and confessed a judgment in favor of the present defendants, for three hundred dollars, with interest from the 9th of March, 1830, against *Samuel Mickle.* On the 20th of March, 1830, the plaintiff in this suit, *Benjamin Campbell,* filed a transcript of a judgment which he had obtained against *Samuel Mickle,* before a justice. There were other judgments against him, all of which would be postponed, if that of *Kent* and others was a valid judgment. The defendants gave in

(Campbell *v.* Kent.)

evidence, also, the following paper, which was signed by *Samuel Mickle;* but when, it did not appear, as it was without date.

"*Andrew Buchanan, Esquire:*

As I am about to leave *Greene* county for some time, and having a strong desire to indemnify my sureties for money borrowed from the bank, I hereby authorize you to appear as my attorney, and confess judgment against me for the amount of the bank debt, or any thing else which may be deemed expedient by you for indemnifying my said sureties; and whatever you may do, or have already done in the premises, I hereby ratify and confirm."

The court, (*Baird* president,) in answer to certain points put by defendant's counsel, thus charged the jury:

1. The judgment entered in the docket in favor of the defendants, by confession of *A. Buchanan,* Esquire, is *prima facia* a valid judgment, and cannot be set aside unless there was fraud or collusion. The authority of *Buchanan* will be presumed until the facts impeach it on the grounds I have suggested. But it is not indispensable that actual or moral fraud should be shown, in order to impeach the judgment as respects creditors. If the authority was obtained from the wife of *Mickle,* by the solicitation and influence of the defendants, they knowing that she was not the special or general agent of her husband, it would amount to a legal fraud, an illegal act; prejudicial to the rights of others, and may therefore be avoided as respects them.

2. The paper in evidence, signed by *S. Mickle,* if truly what it purports to be, an antecedent authority to Mr. *Buchanan* to confess judgment to the defendants, puts an end to the question. It is proved by the defendant's witnesses that *Mickle* left the country some days before the judgment to *Kent* and others was confessed. The paper states, *"that he is about to leave the county,"* &c. If, however, you believe, from all the facts in evidence, that it was not executed until after the plaintiff's judgment was docketed, it will not affect him. It can have no retrospective operation to the prejudice of intervening creditors. As to *Mickle* himself it may be good. If the act of Mr. *Buchanan,* therefore, was without authority, and obtained by the means suggested, the ratification of that act by *S. Mickle,* subsequently to the judgment of the plaintiff, will not be good, (so far as respects the plaintiff,) from the date of the entry, notwithstanding the claim of the defendant, was honest and *bona fide.*

To this opinion exception was taken by defendants, which, in this court, was relied upon.

*McKennan* for plaintiff in error.

The authority of the attorney who confessed the judgment, cannot be questioned or impugned by third persons. 1 *Salk.* 86. 1

*Bacon,* 291. 1. *Strange,* 693. 5 *Mod.* 295. 6 *Mod.* 16, 40, 41. 6 *Johns.* 36, 296, 318. 1 *Bin.* 214, 469.

It was not questioned but that the debt for which the judgment was confessed, was a meritorious one; and *Mickle* having ratified and confirmed what the attorney had done, like all other acts of confirmation had relation back to the time when the thing to be confirmed was done.

*M'Giffen* for defendant in error,

Insisted upon the evils which would result from the doctrine, that the acts of an attorney at law are so conclusive as that a judgment confessed by him without authority, will be binding under all circumstances.    A resort to an attorney, would in many cases be a very ineffectual remedy, and although the remark is not applicable to this case, yet it is to the principle of it. The fact of *Mickle* being at the time an absconding debtor, distinguishes this from all the cases cited.

The opinion of the court was delivered by

HUSTON, J.—The opinion of the court below has been attacked solely on the ground of authority, and we are told if it be supported, we will overturn a long list of authorities. ˙ I shall consider some of them briefly.    Two cases from our own books were cited: 1 *Bin.* 214; in this case the writ was against two, served on one only, and an appearance for both; the cause was referred, and a report made against both, upon which judgment was entered, and a *fieri facias* issued, which was levied on a mill and farm of the defendant on whom the writ had been served.    An inquisition was held, which found that the rents, issues and profits would pay the incumbrances within seven years.    The plaintiff's attorney then entered a discontinuance to his *fi. fa.*, took out an *als. fi. fa.*, and levied on a tract of land, the property of that defendant, on whom the writ had not been served, which was condemned and sold. The defendants were brothers, and it was scarcely possible that both should not have heard of the reference and of the first *fi. fa.*, and inquisition.    The application to the court was not founded on *an affidavit of Robert,* on whom *the writ* was not served, *that he never employed the attorney; never knew that he had appeared for both,* &c.; it was solely on the ground, that he had no right to appear for a defendant on whom no writ was served, and who had not directed him to appear.    The court having determined to set aside the second *fi. fa. vend. exps.* and sale, because the plaintiff would not relinquish his first *fi. fa.*, &c., and to compel the plaintiff to proceed against him on whom the process had been served, do not appear to have considered this matter much: all that is said on this part of the case is in these words: "the

(Campbell *v.* Kent.)

judgment below must be affirmed, because it sufficiently appears that the attorney appeared for both defendants;" and they might have added, it does not appear that he was not authorized to appear for both.   It must be admitted, however, we have several cases where such an appearance by an attorney for a defendant, on whom the writ was not served, and judgment on it, has been held valid; but I believe no one in which such defendant swore that he never knew of the suit or of the appearance; that he never employed the attorney, or authorized any person to employ him, and never heard of or suspected an appearance for himself, until shortly before his application to the court.   And it has not yet been decided in this state, that on such a state of facts, uncontradicted, a judgment would stand.

The next case cited, 1 *Bin.* 469, has no application to this.   An attorney regularly retained by the defendant, had, by rules, to declare, obtained a *non pros.*   A year afterwards he agreed that this *non pros.* should be taken off, and a declaration filed, which was done.

The decision was, that by the practice in this state, an attorney had authority to take off a *non pros.*—that the authority of an attorney here is not limited in the same manner that it is in England —for a payment to plaintiff's attorney, long after judgment, and without execution, had been held good.

Many authorities from the English books were cited, to which I observe that the last case, and some other cases, decide, that the law is not the same in this state, as to the authority of an attorney, as it is in England, and I shall not cite them, because all that were here cited, and many more, are collected in 6 *Johns.* 296. On that case the defendants principally relied; but even that case will not support this proceeding; for first, it was conceded that no usage, nor no case, justified an attorney in appearing in vacation, where no writ had issued, and confessing a judgment.   There are cases in which the attorney appeared after a writ issued, and before service; but none where an attorney, without any writ or suit, and without warrant, appeared and confessed judgment; and no case of the kind can be shown, I believe, where such judgment has been sustained. And secondly, that case is expressly put on the ground that the plaintiffs and their attorney were as innocent as the defendant. "If," says *Chief Justice Kent,* "there had been any collusion between the plaintiff's and defendant's attorney, it would have altered the case; but there is none shown or pretended, and my whole opinion proceeds on the ground, that the plaintiffs have acted with good faith."   And again, he speaks of the plaintiff being entitled to protection; but what court ever held itself bound to protect a party who had assumed, or prevailed on another to assume, for their benefit, a character or authority to which he had no right, and

(Campbell *v.* Kent.)

whose conduct was equally contrary to rules of court, and to morality?

The majority of the court there admit, that the practice in England is not correct, reasoning from principles, (*page* 304;) and they departed from the English practice by opening the judgment, and letting the party appear and plead. The dissenting judge has shown, that the law was not originally so in England, and is not now so; and to his opinion, and the cases he cites, I refer. I will add, that in the next case in the same book, 318, that court decided that a judgment for costs, against a plaintiff, in whose name a suit had been brought without his authority, was held void as to him, and he discharged from attachment, on which he was brought into court, for not paying those costs.

We have two decisions, which have not been cited, which bear on this question. Some lawyers were in the habit of confessing judgment in several counties on the same bond and warrant; and after judgment confessed in one county, all subsequent judgments were held to be void; so much so, as that the court was bound to vacate them on motion. 6 *Serg. & Rawle*, 296, *Martin* v. *Rex.* 14 *Serg. & Rawle,* 166, *Neff* v. *Barr;* and this, although the warrant authorizes the attorney to enter judgments in the plural. 3 *Wash. C. C. Rep.* 558. In the two first cases it is intimated that a sale, under such second judgment, would give a good title: no such matter was before the court. I admit there may be cases in which such might be the result; but I can also conceive of cases in which such sale would not give any title; *e. g.* where the plaintiff, whose debt was thus fraudulently made a judgment, became himself the purchaser; and certainly, if he had before collected his debt in another county.

These cases decide, that a judgment confessed by an attorney, without a warrant, may be vacated on motion. If such judgment was not void, it could not be easy to find either reason or authority for disposing of it in that manner. This one has less color to support it than existed in those cases.

Having no Court of Chancery in which to obtain an injunction, we attain the result by opening the judgment, and letting the party into a defence, or permitting creditors to interplead; and whatever may be done on application of the party, may be on application of a *bona fide* creditor; this practice is of long standing, sanctioned by many decisions, and at least one act of assembly. The right of the creditors to interfere was not denied in this case.

In one of the cases cited, 1 *Salk.* 88, and in the argument here, much stress was laid on the fact that the attorney was of good character, and responsible in point of property. How can that alter the case? how long will an attorney be responsible in property who adopts such a practice? When is his responsibility to be test-

(Campbell *v.* Kent.)

ed or how?   A man procures a title for land under a power
of attorney forged by his procurement, or alleged by him to ex-
ist, when he knows it does not exist; will any one say his title is
good because the person who acted as attorney is reputed rich?
Judgment and execution is a mode of transferring titles to lands.
On what principle shall or can it be said, that a fraud of one kind
is totally void, and another good and effectual, unless I had some
notice and by my silence or laches, occasioned an innocent man to
lay out his money, confiding that what was done in form of law,
was fairly done, as against the fraudulent party himself, it is no
protection, that he has shrouded his conduct in the garb of legal
proceedings.

If this conduct is sanctioned, there is an end of all distinction
between bonds with warrant to confess judgment, and common
bonds, nay every common demand.   No man can, however care-
ful and methodical, know how to arrange his business or when to
look for an execution.   The statute against fraudulent conveyances
to defraud or hinder creditors, will no longer be of any avail.   The
debtor may determine to give no preference to any creditor, but
any creditor without the debtor's knowledge can get a preference,
if he can find an attorney who will do what he is asked to do or
paid for doing, either without reflection, as I suppose was the case
here, or without principle, if he does reflect—as may be the next
case which will be presented.   The court is therefore of opinion
that the judgment be affirmed.

GIBSON C. J.—In contemplation of law, every judgment is an
act of the court.   It is called by Lord Coke *"Judicium quasi ju-
ris dictum*, the very voice of law and right; and therefore *judici-
um semper pro veritate accipitur."*   It is the sentence of the
law, says *Blackstone*, pronounced by the court on the record of
the facts, 3 *Com.* 395-6; and it is surely immaterial to its essence
whether these be ascertained by the *cognovit* of the party or the
verdict of a jury.   Viewing it as such, it is easy to comprehend
how a security by judgment may be good though erroneous, while
a security by act of the party may be void in the first instance
when executed without authority in his name.   In the one case,
the effect emanates, if at all, from his own power, and in the other,
from a power superior to him.   On this principle, a judgment
confessed by an attorney, though without warrant, is good till
it is reversed.   By the common law the default of a warrant of at-
torney is an error, but one that has been cured, except in particu-
lar circumstances, by statute.   Still a judgment rendered without
a semblance of authority, may be set aside on motion and due con-
sideration of the circumstances; but the interposition of the court,
being of favor and not of right, is to be invoked only in the last re-
sort; as where the attorney is not of sufficient estate to answer the

consequences in an action. "The course of the court is," said *Lord Holt,* "where an attorney takes upon him to appear, the court looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against him." *Anon.* 1 *Salk.* 86. And again: If "the attorney be able and responsible, we will not set aside the judgment; the reason is, because the judgment is *regular* and the plaintiff ought not to suffer; but if the attorney be not responsible but suspicious (in his circumstances) we will set aside the judgment, for otherwise the defendant would have no remedy, and any one might be undone by that means." *Anon. Salk.* 88. The same rule was followed in *Allely* v. *Colley, Cro. Jac.* 695. *Lorymer* v. *Hollister,* 1 *Stra.* 685, and many other cases which it is unnecessary to notice, the authorities on the subject having been arranged by *Chief Justice Kent,* in *Denton* v. *Noyes,* 6 *Johns.* 296. In that case, the defendant was permitted to plead to the merits, while the judgment was suffered to stand as a security—a practice conformable to our own in cases of fraud, and preferable in my opinion to that of the English courts, as it gives the defendant, without jeoparding the rights of the plaintiff, every fair advantage to be had from an entire vacation of the judgment. I have cited the preceding authorities for a principle that has never been denied, even by Mr. *Justice Van Ness,* in dissenting from the judgment in *Denton* v. *Noyes,* that an actual appearance to the court is sufficient in the first instance. From the time of *Cole* v. *Law, Roll. Ab.* 741, to the decisions of our own court in *M'Collough* v. *Guefner,* 1 *Binney,* 214, and *Reinhold* v. *Albertie, id.* 469, a judgment *de facto* has ever been treated as but voidable. In *Martin* v. *Rex,* 6 *Serg. & Rawle,* 296, the very point made here was directly decided. It was there determined that a judgment confessed by virtue of a warrant which, having been exhausted by the confession of a previous judgment, was no warrant at all, was nevertheless not void, though clearly irregular, insomuch that a purchaser under it would have had a title; and that the remedy of the party injured, was by action against the attorney, yet at the entry of the judgment, the last spark of authority emanating from the warrant that became extinct. The determination of the case at bar, has been put on the ground, either that the judgment is void already, or that it is tainted with such fraud, as lays it open to avoidance by creditors in a collateral proceeding. That it is not void, the authorities abundantly prove; and that it is not fraudulent, appears from the interpretation of the word in the books.

It is an undoubted rule, that a judgment may be collaterally impeached for collusion: but I dissent from the conclusion of the majority that there was any thing in the transaction from which collusion could be inferred. It is not only a material but a vital part of

(Campbell *v.* Kent.)

the case, that the responsibility which the judgment was intended to secure, had been actually incurred, and in seeking indemnity for a loss impending from it, the plaintiffs might, not only lawfully but honorably, obtain a preference to the disadvantage of the other creditors.   With whom could they collude?   Not with the defendant; for to have obtained his participation, would have put the validity of the act beyond the reach of controversy.   In no case can *per fraudem* be replied to the plea of a judgment suffered, unless there was collusion with him who suffered it; at least I have looked in vain for a precedent of it in any other case.   In two precedents in 3 *Chitty Pl.* 1166, the judgment is alleged to have been acknowledged with an intent to defraud by the instrumentality of a fictitious debt; and the whole is charged to be the fraud of the defendant.   Such too was the form of the replication in *Trethewy* v. *Ackland,* 2 *Saund.* 49. But putting the attorney in the place of the defendant and with the same capacity to collude, the difficulty that there was an actual *bona fide* duty to be secured is insurmountable.   In *Veale* v. *Gatisdon, Sir W. Jones,* 91, it was resolved that a judgment acknowledged *for a true debt,* though for the avowed purpose of defeating other creditors, cannot be avoided; and the same principle was held in *Waring* v. *Danvers,* 1 *P. Wms.* 295, and *Morice* v. *The Bank of England, Ca. Temp. Talb.* 225.   Here the liability for which the plaintiffs were to be indemnified, was an actual and an honest one; and it is proper to remark that there was nothing in the transaction to reflect on the honor of the attorney or any one else.   He appears to have been consulted by all parties to effect the performance of a moral duty by the defendant in his absence; and by the brother of the defendant's wife who was examined on the part of the creditors, he was called *her* counsel.   But to . treat him as having been retained by the plaintiffs exclusively, would produce exactly the same results.   *Allely* v. *Colley* was the very case of a judgment confessed by an attorney retained by the plaintiff without the defendant's knowledge; yet it was held good even on *audita querela,* and if good against the defendant, it would surely be so against his creditors.

The rule that a judgment cannot be reversed by a collateral proceeding, except for fraud, is an undoubted one; but it seems to admit of this further exception, that strangers to whom it is immediately injurious, may reverse it by plea; because, standing in no privity to the parties, they are not precluded from an averment against it, and because they would otherwise be without remedy. This distinction was made in *Godfrey's* case, 11 *Co.* 44; and in *Randal's* case, 2 *Mod.* 308, it was taken *arguendo* and apparently recognised by the court.   In *Winter* v. *Perry, Cro. Eliz.* 199, a plea to a *scire facias* against bail, that the defendant in the original

action was dead at the rendition of the judgment, was at first deem-ed inadmissible as going to avoid the judgment, which, it was said, could be done only by writ of error; but it seems to have been subsequently received, though another report of the case in 1 *Le.* 101, *pl.* 125, leaves the principle of the decision in doubt. Perhaps the true ground of both that and *Randal's* case, is, that the judgment was not only injurious but void, having been rendered against a party not in existence, and therefore requiring no reversal to render it a nullity. The decisions in our own court have generally been between parties who being bound by the judgment as an estoppel, might have reversed it by writ of error; and to whom the general rule was consequently held applicable. Thus, *Nace* v. *Hollenback*, 1 *Serg. & Rawle*, 348; *Colley* v. *Latimer*, 5 *Serg. & Rawle*, 211; *Allison* v. *Rankin*, 7 *Serg. & Rawle*, 269; and *Blythe* v. *Richards*, 10 *Serg. & Rawle*, 269, were cases in which a mortgagor was precluded from alleging the existence of error in proceedings on the mortgage, in an ejectment against the purchaser at the sheriff's sale; and in *Porter's Executors* v. *Neff*, 11 *Serg. & Rawle*, 208, a broad intimation was given that an erroneous judgment could not be reversed in an action between the plain-tiff in it and an alienee of the defendant's land. On the other hand, it was held in *Stump* v. *Findlay*, 2 *Rawle*, 168, that a common recovery may be abated by entry and plea; and so far all has been in accordance with the rule or its exceptions, as already stated. But a difficulty arises when we come to determine the relation which creditors bear to the parties. An application by them to open the judgment in order to try a question of fraud, will undoubtedly be entertained, or a collateral issue ordered, as in *Kellog* v. *Krauser*, 14 *Serg. & Rawle*, 307, and *Whiting* v. *Johnson*, 11 *Serg. & Rawle*, 328. But can they be admitted to destroy the security of the lien, and that too for a mere error in process, or any other part of the proceeding? We have but one decision on the point, and it merits, for that reason, a particular consideration. I refer to *Lewis* v. *Smith*, 2 *Serg. & Rawle*, 142, which was an action for the proceeds of an execution from the Circuit Court of the United States, claimed by virtue of a prior execution from the Supreme Court of Pennsylvania, which had been levied on the same goods. The marshal having taken defence on the title of the subsequent execution creditor, excepted to the regularity of the judgment on which the prior execution had been issued; so that the contest was there as it is here, between creditors. The objection to the judgment was that it had not been entered according to the terms of the confession. The agreement was without date, but it bore that judgment should be entered of *December* term, 1799, whereas the paper was not filed till the 20th of March, 1800. "It does not clearly appear from a view of the docket," said Chief Justice *Tilghman*

(Campbell *v.* Kent.)

"whether the judgment was really entered of *December* or *March* term, but I will suppose it to be March; still I think the judgment may be supported; NOBODY WAS INJURED BY IT. To *Fitzsimmons* (the defendant,) if it made any difference, it was rather an advantage, for he gained something on the score of interest, as on the entry of judgment on the *scire facias*, the interest due on the original judgment would become principal. HE never complained, though it was always in his power to have had the judgment OPENED, if he considered it as a violation of his agreement. AT ANY RATE, IT CANNOT BE SAID THAT THE JUDGMENT WAS VOID; IT WAS ENTERED BY THE PROTHONOTARY, AND NEVER HAVING BEEN REVERSED, THE COURT CANNOT IN THIS COLLATERAL WAY CONSIDER IT AS VOID." Mr. *Justice Yeates* was of opinion the judgment was entered of *December* term, 1799. "Should I however be mistaken," he subjoined, "I have no hesitation in saying this judgment remains in full force. It cannot be annulled collaterally in another suit between other parties. Mr. *Fitzsimmons* never complained of it in his life-time, nor can I discover, if such error existed, how it could possibly be injurious to him." Is not that essentially the case at bar? Although a judgment entered against the terms of an agreement, is no better than if there had been no agreement, it was held that whoever else might complain, the creditors could not. The difference in other respects is, that here the lien is on land and there it was on goods; that here it proceeds from a judgment, and there it proceeded from an execution; but one to the validity of which a valid judgment was as essential as it is to the existence of a lien in the case before us. There the defendant in the judgment never complained of it, nor has the defendant complained of it here; and that it was not injurious to him, is proved by his subsequent confirmation of it. As regards himself, this confirmation is admitted to be equivalent to a precedent authority, but not as regards intervening judgment-creditors. This assumption that there were intervening judgment-creditors, is founded on another, that there was a moment when the judgment ceased to bind. If, however, it was but voidable, there never was that moment. The argument would be unanswerable if the judgment had received its vitality from the act of confirmation, and not from what is in legal estimation the act of the court; but the authorities, without an exception, bear the other way. What then is the right of the creditors to object? When the judgment was rendered, they had no interest in the land further than to be protected from gratuitous incumbrances or a fraudulent transfer of it; and this judgment was neither. In no other way could they be injured. If the defendant might have authorized such a judgment, the confession of it by another without his authority, was an abuse of his rights, not theirs, which entitled him, and not them, to call for redress. If

(Campbell *v.* Kent.)

their right to object is an independent one and paramount to his, they must have an interest to be affected which is also paramount to his; and that they have not, is proved by the fact that he was competent to give an incontestable preference by a mere exercise of his will.    According to all the authorities, the judgment bound him from the entry of it, and as there was then no opposing interests, it also bound his land.    When did it cease to do so?    If it was *ipso facto* annulled by the rendition of subsequent judgments, these must have had the effect of avoiding what was only voidable before, and it seems to me the indirect reversal of one judgment by another, where the party to be affected had no day in court, is a thing unknown in the law.    A subsequent judgment bond is only the resulting interest of the debtor, and how it can displace a preceding one which was valid against him, without attaching itself to an estate or interest paramount, is what I am unable to comprehend.    If such a judgment as this binds the debtor's person, it necessarily binds his land in exclusion of subsequent liens. And why should creditors be allowed to destroy a lien for a defect in the judgment, which was no prejudice to them?    No one will say that a writ of error would be allowed to enable them to reverse a judgment on warrant of attorney, for a defect in setting out the cause of action, unless it affected the certainty of the judgment itself.    The most they could claim in a case of mere error like the present, would be (according to what is the practice of the courts in New York, and ought to be so elsewhere,) the benefit of a defence on the merits, without sweeping away the lien in the first instance. For these reasons, it appears to me, there was error in the trial of the issue, for which the judgment on the verdict ought to be reversed.*

KENNEDY, J. concurred with GIBSON, C. J.

Judgment affirmed.

* In *McCormick et al v. Miller,* (post) determined at the ensuing term for the southern circuit, an erroneous judgment by default was sustained against creditors, though surreptitiously obtained, to gain a preference over a domestic attachment then in train.    The summons was illegal, the day of appearance being less than five days from the date—the period allowed by the act of Assembly; and though the defendant might by possibility have been served, though proved to have been an absconding debtor, yet the service of a void writ, being in legal estimation, no service at all, gave the justice no more authority to sign judgment, than does the office of an attorney without warrant.