## SUPREME COURT.

JOHN EVERSON agt. C. GEHRMAN and J. C. EVERSON.

One *partner* cannot, against the explicit objections and known wishes of his co-partner, *confess a judgment* in favor of a partnership creditor, in the name of the firm, that will bind his co-partner, or *partnership property.*

The principle is analogous to an assignment by one partner, to a trustee, for the benefit of creditors; which operates as a *fraud on the right* of the co-partner to participate in the distribution of the partnership funds and effects among the creditors. Besides, one partner has no *authority*, express or *implied*, to confess judgment under such circumstances.

The obligations and duties of partners discussed.

*New-York General Term, December*, 1854.

THE defendant, Gehrman, moved, at special term, to set aside a judgment against him and J. C. Everson, for irregularity; and also as entered by collusion between the two Eversons, and in fraud of Gehrman's rights. The motion was denied, and the defendant, Everson, allowed to amend the offer to confess judgment, so that it should be in the joint names of the firm, instead of being in his name alone. The defendant, Gehrman, appealed.

HOOPER C. VAN VORST, *for Gehrman.*
JAMES W. NYE, *for plaintiff.*

By the court—MITCHELL, Justice. It may fairly be inferred, from the affidavits in this case, that Gehrman became indebted to the plaintiff, in the year 1853, in a sum exceeding three or four thousand dollars: that on the 1st of January, 1854, Gehrman and the plaintiff's son entered into partnership; and the debt remaining unpaid, the plaintiff agreed with the defendants, in March, 1854, that they should give him $2,487.45, and that he should then give to his son the balance due to the plaintiff. In April, 1854, the son gave to the father $687.45 in bills due to the firm, and the note of the firm for $1,800.

Such an agreement, made by the firm in good faith, and with the concurrence of both of its members, would bind the firm : the loss to the plaintiff, in releasing part of his debt, was a sufficient consideration for it. In August, the plaintiff applied to the defendants to pay the note of $1,800, or to secure it; they said they could not.. He asked for a judgment, but Gehrman refused to give one; and he swears that Gehrman said that if any one sued him, he would sell his property and dispose of it, so that such person could not collect the judgment. At the same time the son was desirous that judgment should be confessed. Thus the plaintiff and his son, the partner of Gehrman, each knew that Gehrman was determined that the plaintiff should not have any preference by a judgment against the firm. With this knowledge, the father and son immediately contrived their plans, and carried them out; and the question is, whether they should be aided by the court to make effectual a scheme, in which they colluded together to gain an advantage to the father over other creditors of the firm, against the known and express wishes of Gehrman, the other member of the firm.

The facts clearly show, that the action against the defendants was commenced and carried on, and all its parts arranged, by concert between the plaintiff and his son; and designedly concealed from Gehrman, the partner of the son; and with the knowledge that he was opposed to any such scheme. The plaintiff's counsel admitted it; and while the defendants' counsel called it a collusion to defraud Gehrman out of his rights, the plaintiff's counsel insisted that it was a plan to do good.

The plaintiff's attorney resided in Madison county, not far from the residence of the plaintiff. They conducted all the proceedings; and all the papers in the cause, including the offer of the defendant, Everson, and any other papers on the part of the defendant, were in their handwriting.

The summons was addressed to both defendants : it had no date to it. The complaint was on the $1,800 note, and is sworn to by the plaintiff on the 21st of August, 1854. The same day the plaintiff's attorney made affidavit of the service of the summons and complaint on the defendant, Everson. At

this time Gehrman was in his store, and could have been also served with the same papers; and this must have been known to the plaintiff and his attorney; but they designedly refrained from serving them on him, as that would frustrate their scheme. On the same day the defendant, Everson, signed a paper, stating that "*the defendant, John C. Everson,* hereby offers to let judgment be entered against *him* in favor of the plaintiff;" and that judgment was thereby confessed in favor of the plaintiff for $1,845.50, besides costs. He signed it in his own name only. On the same day the plaintiff's attorney served on the defendant, Everson, a notice addressed to *him alone,* that the plaintiff accepts your offer to let judgment be entered against you; and made affidavit that he had served it on J. C. Everson, *one* of the defendants. On the same day also, J. C. Everson made affidavit that the defendants were justly indebted to the plaintiff in $1,800, and interest from 11th April, 1854, on the above note. On the same day, at twenty-two minutes after 9 o'clock in the morning, judgment was entered against both defendants for $1,845.50 damages, and $10.59 costs—the papers above mentioned forming part of the judgment roll; and execution was issued, and at about ten o'clock on the same morning was levied on the stock in trade of the firm of the defendants.

Under these circumstances, there could be no doubt that all this was done by father and son in collusion with each other, to give a preference to the father over the other creditors of the firm, and against the known and fixed purpose of Gehrman, one of the members of the firm.

The judge, at special term, allowed the judgment and execution to stand as security; and allowed the defendant, Gehrman, to defend the action; and also permitted John C. Everson to amend his offer to confess judgment, so that it should appear to be made on behalf of the firm, instead of his own behalf alone; and also to sign the firm name to the offer.

In *Egberts* agt. *Wood,* (3 *Paige,* 517,) the complaint alleged that an assignment had been made by Jessup without the consent of his partner, Vandenburgh; and sought to set it aside

on that account; but the answer denied this, and alleged that it was made with the consent of Vandenburgh : this was held conclusive on a motion to dissolve an injunction. (*See pages* 519, 521.) The chancellor expressly avoided, at that time, " expressing any opinion in *favor* of the validity of an assignment of partnership effects to a trustee, by one partner against the known wishes of his co-partner, and in *fraud of his right* to participate in the distribution of partnership funds among the creditors." (*Page* 525.)

In *Havens & Dow* agt. *Hussey, &c.*, (5 *Paige*, 30,) the chancellor, repeating the language in 3 *Paige*, characterizing such an assignment as a fraud *on the right of the other partner* to participate in the distribution of the partnership effects among the creditors, *held*, " upon the most deliberate examination, that such an assignment is both illegal and inequitable, and cannot be sustained ;" and he stated that the principle on which an assignment by one partner, in *payment* of a partnership debt, rests, is, that there is an *implied authority* for that purpose from his co-partner, from the very nature of the contract of the co-partnership ; the *payment* of the company debts being always a part of the necessary business of the firm, and that while either party acts fairly *within the limits of such implied authority*, his contracts are valid and binding upon his co-partner ; that one member of the firm may, therefore, *without any express authority from the other*, *discharge* a partnership debt, either by payment of the money, or by transfer to the creditor of any other of the *partnership effects*, although there may not be sufficient left to pay an equal amount to the other creditors of the firm ; but that it is no part of the *ordinary business* of the co-partnership to appoint a trustee of all the partnership effects, for the purpose of selling and distributing the proceeds among the creditors in unequal proportions ; and that no such authority as that can be implied.

The tests are here furnished which determine what acts a partner may do : he may do whatever the articles of co-partnership expressly authorize him to do ; and whatever is within the limits of an implied authority. It is within the limits of the implied

Everson agt. Gehrman and Everson.

authority to do anything that falls within the ordinary business of the firm—as to purchase goods within their line, on cash or credit; and to give the notes or promises of the firm for their payment; and to pay for them in money or any other effects of the firm. But it is not within the *implied authority* to do any act which, if it were proposed to insert it in the articles of co-partnership, each would immediately scout at; nor to do any act, the effect of which is not to continue the business, but to extinguish it; nor for one member of the firm to appear in a suit against the firm, not to promote the wishes of his co-partner, or to defend the suit, but to confess a judgment which he knew the other had declared he would not confess; nor to collude with the plaintiff thus to defeat the wishes of the one whom he professed to represent. If it were proposed to any persons about to enter into a co-partnership, whether they meant that either partner might confess a judgment, to give a preference against the wishes of the other, there could be but one answer to it; and that answer would show that no such power can be implied as arising out of the intention of the parties, although not expressed. No power can be implied, unless it can be inferred that the parties intended to grant it. Their acts may show that intention, as well as their express words; but in an implied authority, the intent is as essential an element as words are in an express authority.

The authority of partners is generally employed in giving acknowledgments of indebtedness, or of payments and promises, or obligations to pay; and in disposing of the partnership property. All these are within their ordinary business. They may also prosecute and defend suits. This is on the assumption that they are acting for and under the sanction of their co-partner. No such assumption can exist where they and the plaintiff in the suit know that the partner is opposed to their proceedings.

There is more reason for sustaining an assignment to a trustee for creditors by a single partner, than a judgment confessed or acknowledged by him in the name of his co-partner, but against his wishes. Each partner has an estate in the partner-

ship effects—each owns them *per my et per tout*—each, therefore, has such a legal estate in them, that his act alone operates to pass the legal title in them; and it is only because such an assignment is a *fraud on the right* of the co-partner to participate in the distribution of the partnership funds among the creditors, that the assignment by one to a trustee, against the will of the other, is void. But in the case of a judgment confessed or acknowledged, the partner confessing it against the wish of his co-partner, not only has no authority, express or implied to do so, but he also is not acting in that matter by virtue of any estate which he has, or directly upon the estate. In the one case, the estate which he has could sustain the mere legal estate which he gives—in the other, the estate which he has gives him no power to act.

In *Deming* agt. *Colt*, before Justices OAKLEY, VANDERPOEL, and SANDFORD, and in *Hayes* agt. *Heyer*, before Justices DUER, MASON, and CAMPBELL, (3 *Sand*. 284,) it was decided, that one member of a firm could not, without the concurrence of his partner, who was at hand, or capable of acting, make a general assignment of the property and effects of the firm to a trustee, for the payment of partnership debts, even where the payment was without preferences; that it was not incident to the right of one partner thus to select an agent, and clothe him with all the authority of the firm. Much less can it be incident to the right of one partner (by indirection even) thus to select his own favorite, and put him in possession of the property of the firm, against the wishes of his co-partner.

The defendant, Everson, had power to confess judgment for himself alone; and with that there should be no interference; but not, under the circumstances, for his partner also; and accordingly the judgment should be made to conform to the confession or offer made by him, and be a judgment against him individually.

It is not necessary to this case, to decide whether an offer to confess judgment, after suit brought, made by one defendant in good faith, on behalf of both, and with the supposed assent of his co-partner, will not sustain a judgment against both.

Here the offer was by one alone, for himself alone; and the judgment is irregular, unless the court allow it to be amended; and that amendment would be by authorizing one defendant to do an act in the name of the other, which it is known to the court that other never authorized, either expressly or by implication; and which he expressly refused to assent to. Neither such dissent, nor any collusion between the plaintiff and one of the defendants, appeared in *Lippman* agt. *Joilson*, (1 *Code R. N. S.* 161, *note*,) nor in *Hammond* agt. *Harris*, (2 *How. Pr. R.* 115,) nor in *Sterne* agt. *Bentley, &c.*, (3 *How. Pr. R.* 331,) nor in *Crane* agt. *French*, (1 *Wend.* 311,) *Grasebrook* agt. *M'Crudie*, (9 *Wend.* 437.)

Nor is this case like those in which an attorney has appeared for both defendants—the court there holding that they would not go behind the record to inquire into his authority to appear, as in *Hammond* agt. *Harris*, and *Sterne* agt. *Bentley*, &c.; *Denton* agt. *Noyes*, (6 *J. R.* 296;) *Grasebrook* agt. *M'Crudie*, (9 *Wend.* 437;) *Blodget* agt. *Conklin & Arnold*, (9 *How. Pr. R.* 442, &c.)

In 2 *How. Pr. R.* 21, *Groesbeck* agt. *Brown & Johnson*—Johnson employed an attorney to appear for both defendants, and confess judgment against both. The attorney was irresponsible, and the judgment was set aside as irregular: Judge BEARDSLEY said that the attorney had no authority to confess judgment against Brown. This must have been on the principle that Johnson, the partner, could not authorize him to do so. He also said that there was reason to believe there was collusion between Johnson, and the attorney, and the plaintiff. He also remarked, that Johnson might have confessed judgment under the joint-debtor act—the declaration being served on him; but that, in the case before him, judgment was against both defendants. So in this case, if the defendant, Everson, is allowed to use the name of Gehrman in the offer of judgment, judgment must be (not, as on the joint-debtor act, against the property only, but) against Gehrman, (as well as Everson,) as if Gehrman had appeared in the suit.

In *Blodget* agt. *Conklin & Arnold*, (9 *How.* 442,) an attorney had appeared in good faith on his part, for both defendants;

and the court allowed the judgment to stand as security; but said that "if collusion between the plaintiff or his attorney and Arnold, or the attorney whom he employed, had been satisfactorily established, the case *would have been entirely different;* and the judgment *would, in that case, be set aside as against Conklin.*" This is but a common instance of the aversion which the law always shows to fraud and coven. So, in the case of *Sterne* agt. *Bentley,* &c., Justice Paige noticed that, "*fraud* or *collusion* between the plaintiff and the defendant, M'Laughlin, or his attorney, was denied by the plaintiff. And in *Denton* agt. *Noyes,* (6 *J. R.* 296,) Chief Justice Kent said, "if there had been *any collusion between the plaintiffs and the attorney for the defendant,* it would have altered the case; but that none was shown or pretended." Here the collusion was between the plaintiff and one defendant; and if the court should sanction the amendment allowed at special term, it would make itself also their instrument.

In *Green, &c.,* agt. *Beals,* (2 *Caine's R.* 254,) and *St. John* agt. *Holmes,* (20 *Wend.* 609,) the court refused to set aside a judgment confessed against two partners, on a warrant of attorney signed by one; but there the one confessing the judgment alone, moved to set it aside; and it was held good as to him; but it might be that the other had assented, or did not choose to object. There, too, *an attorney* must have appeared for both. But an individual, not an attorney, can not appear in court for another without the express authority of that other.

If this judgment should be sustained, it would open the way for one partner to give preferences, as he chose, to any number of creditors of the firm against the wishes of the other, and so produce the same effect as an assignment to a trustee for such purposes, which the partner could not have made. It would also encourage concealment and contrivance against those to whom the partner owed confidence and good faith. If the partners cannot agree, it is best to allow all the creditors to come in equally; or the most diligent, in the fair and regular practice of the law, to succeed.

The order should be so modified as to withdraw from the defendant, Everson, the right to make any amendment; and so as to set aside the judgment as against the defendant, Gehrman, with costs of the appeal.