Mr. Chief Justice ShaRKey
delivered the opinion of the court.
Miller and Cox obtained a supersedeas to a judgment against them in the circuit court of Madison county, in favor of defendants in error, which on motion was discharged in that court, and the case comes up to reverse the judgment on that motion. The facts are to' the following effect: The suit was against the maker and indorsers of a promissory note, Miller and Cox being the second and third indorsers. Process was issued to Madison county for the maker and first indorser, arid to Washington county for Miller and the last indorser, but was not returned. To the declaration a plea was filed by an attorney of the court, commencing in these words: “ And the said defendants, Washington, Cox, and Miller, come and defend,” &c. The plea was the general issue, and the plaintiff obtained a verdict and judgment. An execution issued, which was levied on the property of Miller; he petitioned for a writ of error coram nobis and supersedeas, stating in his petition that he had never *428 been served with process; that the attorney who filed the plea was not employed by him in that or in any other case, and that he knew nothing of the suit or judgment, until the execution was levied on his property.
At the hearing of the motion the defendants in the court below proposed to make up an issue, to try whether Ott was their attorney, and proposed and offered to prove that the attorney was not employed by them; that he had no authority to appear in the suit; that such appearance was unknown to plaintiff in error, and had never been approved. That the plea was filed at the request of the plaintiff’s attorney, in order that his clients might get a judgment at that term against the maker of the note. That this was done under a promise from the attorney of Ewing and Cromey, that the appearance and judgment should not operate prejudicially to the other defendants; but the court refused to allow the issue and proof to be made.
The apparent hardship of this case has induced us to examine into the question involved, with great care. In the case of Jones et al. v. Hunter et al. 4 How. 342, a plea like this, for the defendants generally, was held to be an appearance of all the parties, although two of the defendants had not been served with process. The same question was decided in the same way, in the case of Henderson v. Hamer et al. 5 How. 525. This question has been the subject of adjudication in other states, and has been decided in the same way. McCullough v. Guetner, 1 Binney, 214; Hills et al. v. Ross, 3 Dallas, 331. This precise point received a very full consideration by Chancellor Kent, whilst chief justice of the supreme court of New York; and his conclusion was, that a party was bound by the appearance of an attorney of the court, although he had not been served with process, and had not authorized the attorney to appear for him. Denton et al. v. Noyes, 6 Johns. 296. The cases of Hall v. Williams, and Starbuck v. Murray, so much relied on, have been examined, and whilst they tend to establish the position assumed, yet they do not meet the precise question. They were both actions brought on judgments recovered in sister states, and the question was, how far they were *429 conclusive under the constitution of the United States. The general inclination of the authorities has been to regard such judgments as foreign, and open to inquiry. The first case was an action brought in Massachusetts against Williams & Fiske, on a judgment rendered against them in Georgia. The plea was that they had not been served with process. Another plea was, that Fiske never was an inhabitant of Georgia, and had never been served with process, to both of which the plaintiff replied that they were estopped by the record. On inspection of the record it appeared from the officer’s return, that Williams had been served with process, but Fiske had not. Williams' alone filed a plea. In a subsequent part, however, the record states that, “afterwards, to wit, on, &c., came the within named Henry Hall, &c., as well as the within named Edward Williams an'd Abijah Fiske, within named, by their attorney, &c.” It seems that on a verdict against them, the court rendered judgment against both, by name. The question was, whether Fiske was estopped. This was evidently mere recital by the clerk. The court decided that where there is no appearance and no notice, and the record shows such to have been the case, the judgment is not binding on the party. On this ground the judgment was not regarded as conclusive on Fiske, because' there was no appearance for him. The court seemed to lay much stress on the fact that the attorney appeared for Williams alone, and it was thus virtually conceded that, if the record had shown an appearance for Fiske by attorney, he would have been estopped.
The case of Starbuck v. Murray was an action commenced-in New York on a judgment which had been rendered in Massachusetts, on a proceeding commenced by attachment. The defendant pleaded that he had not been served with process, and had not appeared in person, or by attorney; the plaintiff replied that he was estopped by the record, which declared and averred that the defendant appeared; the replication concludes with a readiness to verify by the record, and the defendant demurred. The question was of course as to the sufficiency of the replication ; and it was evidently bad. We have *430 just seen that a mere recital that the party appeared, does not conclude him, and the same point has been decided in the same way by this court. After a very full investigation of the question, the court decided that the second plea, which averred that the party had not been served with process, and did not appear by himself or attorney, was a good defence to the action. It is a question which does not admit of doubt, that such a plea is good ; the sufficiency of the plea was not the direct question; it was as to the sufficiency of the replication, which did not aver an actual appearance of the party, either by himself or attorney; but only that the record averred that the party appeared. It was an effort to raise an estoppel by matter which was not in effect an estoppel. But the case does not decide that if the record shows affirmatively an appearance of the party by plea, either by himself-or by attorney, that he will be permitted to deny such appearance. The case of Aldrich v. Kinney, 4 Conn. R. 380, is a more' direct authority than any that has been found. It decides that proof may be introduced to show that the attorney was not authorized to appear. That too was the judgment of a sister state, and the decision seems to be predicated on the rule of decision which had been adopted by other courts, that want of jurisdiction might be shown, on the principle that the judgment of a sister state is not conclusive unless the court had jurisdiction of the person and the subject-matter. We have said that an inclination has been manifested to consider the judgments of a sister state as foreign judgments, or at least as something lower in dignity than domestic judgments. And in order to make the judgments of sister states something less than domestic judgments, many of the decisions leave it as an inference to be drawn from the language used, that domestic judgments are higher in dignity than they really are. Thus it is said in a leading case “that judgments rendered in any other of the United States are not, when produced here as the foundations of actions, to be considered as foreign judgments, the merits of- which are to be inquired into, as well as the jurisdiction of the courts rendering them. Neither are they to be considere^ as domestic judgments rendered in our *431 own courts of record, because the jurisdiction of the courts rendering them is a subject of inquiry.” Similar language has been used in other case’s. What is the reason given as constituting the difference? “ Because the jurisdiction of the courts rendering them is a subject of inquiry.” And is not the jurisdiction of the court on domestic judgments, when made the foundation of an action, the subject of inquiry? Is any domestic judgment conclusive unless the court had jurisdiction of the parties, and of the subject-matter of the suit? Surely not. Then the jurisdiction of the court is always a subject of inquiry, and there is in reality no difference between domestic judgments and the judgments of the courts of a sister state, when made the 'foundation of an action. The constitution of the United States places them all on the same footing, and this was the doctrine decided in Mills v. Duryer, 7 Cranch, and afterwards adhered to in Hampton v. McConnell, 3 Wheaton, 234. We admit then that the jurisdiction of the court is a subject of inquiry, even in the judgments of our own courts; but how is the inquiry to be made ? That is the question. It is a question of evidence, and comes down to this; will parol evidence be received in a court of law to contradict the record by proving a fact to be untrue, which is affirmatively asserted to be true on the record ? If so, then any fact may be disproved ; one, as well as another. This would be making judgments but prima facie evidence — good until disproved. If a party may open and reverse a judgment, by denying that he appeared by attorney, he may also deny an appearance made in proper person. It would open the door to an inquiry as to the employment of an attorney, or as to the appearance of the party, to be decided by a jury, and judgments, instead of being the end, would often be the beginning of litigation. A judgment, before it could be said to import verity on its face, would require the aid of a second judgment, establishing the jurisdiction of the court in the first.
In the case cited from 6 Johnson, Chancellor Kent stated the rule of the king’s bench to be, that if the attorney was not responsible, or competent to answer his client, the court would *432 relieve against the judgment; he added, that he was willing to go further, by letting the defendant make his defence to the suit, leaving the judgment to stand as a security to the plaintiff. And he also said that collusion between the plaintiff and the attorney who appeared would alter the case, but does not say what remedy he would have applied. The facts of this case, if truly stated, seem to savor of collusion, and to call for relief. But as the court cannot at a subsequent term set aside its judgments, or reverse them for anything but errors of fact, the relief must be found in the control which a court will exercise over its own process to prevent it from being used as an instrument of oppression, by staying proceedings until the judgment was attacked by bill in chancery, for fraud. Supersedeas ought not, under the circumstances, to have been discharged, although the judgment ought not to have been disturbed. The supersedeas was improperly discharged, for another reason, so far as Cox was concerned. There was an execution against him without a judgment, the suit having been dismissed as to him. He had joined in the application for the supersedeas, and by discharging it the court in effect sustained an execution against him without a judgment.
The judgment discharging the supersedeas must be reversed, and the cau.se remanded, to be disposed of according to this opinion.