MOLLIE S. D'ELIZA, Appellant, v. MARIA L. RITONDO et al., Respondents.

Foreclosure — order opening judgment in foreclosure and permitting defendants to interpose an answer — when thereafter it is held that the issues raised by the answer are untenable and that the foreclosure proceedings are proper and valid it is error to set aside the judgment and order a resale.

1. The only difference between setting aside a decree, and opening it up in order to let a party in to defend, is that in the former case the decree is at once annulled, while in the latter it is permitted to stand with all the proceedings thereunder stayed, until the court may determine whether the defense is good or not. If the defense fails, the judgment is confirmed; if the defense succeeds, a new judgment takes the place of the original.

2. Where an order was made which permitted a defendant on an application to set aside a judgment in foreclosure to interpose an answer and permitted the judgment in the meantime "to stand until

the final determination of the issues raised by the answer," and it was held on the trial that the judgment was valid and the issues raised decided against the defendants, no issue having been raised as to the validity of the proceedings, and it being held that the former judgment was right, the mortgage valid and properly foreclosed, and that defendants had no interest in the property except as theretofore determined, it was error to set aside the judgment and order a resale. The legal effect of the order that the prior judgment proceedings, including the sale, should stand until the determination of that issue was, that the judgment and sale should finally stand unless some issue raised by defendant's answer found in her favor required a modification. (*Pomeroy* v. *Hocking Valley Ry. Co.*, 187 App. Div. 158; *Negley* v. *Counting Room Co.*, 2 How. Pr. [N. S.] 237, distinguished.)

*D'Eliza* v. *Ritondo*, 200 App. Div. 877, modified.

(Argued February 1, 1923; decided March 6, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 1, 1922, affirming a judgment of Special Term in an action to foreclose a mortgage.

*Lynn C. Norris* and *Arthur P. Hilton* for appellant. The questions as to the value of the real property in question, whether an accounting should be had and whether the defendants should be permitted to redeem from the mortgage, were not contemplated by the said order of the Appellate Division and were not relevant under the pleadings served in pursuance of said order. (Freeman on Co-tenancy [2d ed.], § 165; *Streeter* v. *Schultz*, 45 Hun, 406; 127 N. Y. 652; *Thayer* v. *Leggett*, 229 N. Y. 152.) The order of the Appellate Division in question did not vacate the original judgment of foreclosure, or the sale thereunder. (*People ex rel. Warschauer* v. *Dalton*, 159 N. Y. 235; *Stemmler* v. *Mayor, etc., of N. Y.*, 179 N. Y. 473; *Wines* v. *Mayor, etc., of N. Y.*, 70 N. Y. 613; *Matter of Cooper*, 93 N. Y. 507; *Dunham* v. *Thompson*, 118 N. Y. 281; *Silverstein* v. *Brown*, 153 App. Div. 677; *Standard Fashion Co.* v. *Thompson*, 137 App. Div. 588; *Devine* v. *Melton*, 170 App. Div. 280.)

*Frederick L. Gilbert* for respondents. The trial court upon the proceedings had before it had the power and authority in law to decree a new judgment and re-sale of the property and give the defendants the right to redeem. (*McDougal* v. *Hoes*, 27 Misc. Rep. 590; *Pomeroy* v. *H. V. R. R. Co.*, 187 App. Div. 158; *Negley* v. *Counting Room Co.*, 2 How. Pr. [N. S.] 237; *Mott* v. *Union Bank*, 8 Bosw. 591; 38 N. Y. 18.)

*Henry L. Maxson*, guardian *ad litem*, for infants respondents. The trial court acted within its proper sphere in directing the judgment in the form now before the court. (*Mott* v. *Oppenheimer*, 135 N. Y. 312; *Smith* v. *First Nat. Bank*, 151 App. Div. 317; *Bloomquist* v. *Farson*, 222 N. Y. 375.)

CRANE, J. This action was brought to foreclose a mortgage given to the plaintiff by her mother on property which she took as survivor in a tenancy by entirety. Natale Stamile and Charlotte, his wife, the plaintiff's father and mother, took the property in question as tenants by entirety under full covenant and warranty deed on October 25, 1905. When the husband died on April 22, 1910, his wife, surviving him, became owner in fee. She gave to her daughter, Mollie Stamile, the bond and mortgage in suit, dated September 23, 1910, as a wedding dowry upon her marriage to Evangelist D'Eliza. The mortgage debt carried six per cent interest due and payable from the death of the mother. The defendants, Mariagata Stamile Santoro, Maria Louise Ritondo, Susie Stamile Cascardi and Ida Stamile are daughters of the said Natale Stamile and Charlotte Stamile, and the only heirs at law and next of kin of said Charlotte Stamile. Prior to the death of the father and on or about the 7th day of July, 1907, he and his wife executed a certain paper which purported to be a mutual will whereby it was provided that upon the death of

either, the survivor should take the real property for
life with the remainder to their children. The terms
of this will need not here be given as the courts below
have held that upon the death of the husband, the wife
took a fee of the property as the survivor under the
tenancy by the entirety and did not take under this will
merely a life tenancy with the remainder to the children.
The court found that there was no contract to make
mutual wills binding upon the wife. This conclusion
cannot now be questioned as there has been no appeal
taken by the remaindermen from this decision.

The principal and interest not having been paid on
the death of Charlotte Stamile November 17, 1912, this
action to foreclose was commenced, resulting in a decree
of foreclosure and sale. The property was bought in
by the plaintiff for $1,000 over and above the amount
of principal and interest and other charges and the title
taken in the name of the plaintiff and her husband.

The judgment of foreclosure was made and entered on
the second day of November, 1915, and thereafter and
on the first day of May, 1916, the plaintiff, Mollie
Stamile D'Eliza, and her husband procured a loan of
$3,000 from one John Johnston, and delivered to him
a bond and mortgage for that amount upon the property
as security. Of this amount $2,500 was used to pay off
a first mortgage which was a lien prior to that of the
plaintiff's. Nearly three years after and in September
of 1918, the defendant Mariagata Stamile Santoro, who
was an infant at the time of the foreclosure decree, made
an application to the Supreme Court to set aside the
said judgment of foreclosure and sale entered on Novem-
ber 3, 1915, and while her application was denied by the
Special Term, it was granted on May 9, 1919, by the
Appellate Division in an order which permitted said
defendant to interpose an answer and directed the judg-
ment of foreclosure and sale in the meantime " to stand
until the final determination of the issues raised by the

answer." There were no defects or irregularities in the foreclosure proceedings or in the sale. All these defendants were then parties to the action although infants. The plaintiffs on the sale procured good title which they could pass on as security to their mortgagee. Johnston, the mortgagee, apparently had no notice of this application to open the default and the foreclosure proceedings. In accordance with this permission granted by the Appellate Division order, the defendant Santoro served an answer which raised an issue to be tried. Two other infant defendants, Susie Stamile Cascardi and Ida Stamile through their guardian *ad litem* also served answers although no permission had been granted them to do so. These issues thus raised came on for trial and resulted in the judgment which is under review on this appeal. The only issue raised by Santoro's answer was the title of the mother, Charlotte Stamile, to a fee in the premises. It was alleged that she took under the joint will of herself and husband only a life estate and could not, therefore, give to the plaintiff the mortgage in question which would survive her death as a lien. There was no issue, so far as I can discover, raised as to the validity of the prior foreclosure proceedings and sale, nor was any demand made in the answer to set them aside as unfair or inequitable, and to permit this defendant or codefendants to redeem the property.

The action proceeded to trial resulting in the same decision as had previously been made in 1915, *i. e.*, the mortgage was declared valid, the issues raised by the answers being decided against the defendants. This might have resulted in a judgment confirming the prior judgment of 1915 and declaring it valid and binding. As stated, the Appellate Division opened the default solely for the purpose of trying the issue raised by the answer of Santoro, directing the judgment of foreclosure to stand until the issues were so determined. The prior judgment of foreclosure and sale was not disturbed nor

the actual sale which had taken place set aside. All the proceedings stood as binding upon all parties. After hearing these defendants the trial court found that the previous judgment was right, that the plaintiff's mortgage was valid and was properly foreclosed and that these defendants had no interest therein other than as determined in the prior action. There was no reason, therefore, for setting aside the prior judgment of foreclosure and sale and directing a resale. No doubt these defendants could have had such relief if any such issue had been raised and the sale had resulted in any great injustice to them or the equities of the situation made it right that a resale should be ordered. If upon the sale the defendants were not properly represented or could not have been for any justifiable reason, or the sale took place under conditions indicating that the property did not bring its fair market value and the plaintiff greatly profited by receiving an equity above the amount of the mortgage and interest which she would not have received under a properly conducted sale, the court could have ordered a resale or redemption in the interest of all the heirs. However, no such claim was made in the answer nor upon the trial. It was found as a fact that the property was worth at the time of this trial approximately $14,000. There was due the plaintiff upon her mortgage $7,461.60. She paid $1,000 for the property on the sale. There was $2,500 on the first mortgage which remained a lien upon the property after the sale. This totalled about $11,000 exclusive of the costs and expenses of the foreclosure leaving an apparent equity of $3,000 which the plaintiff obtained in 1915 by buying in the property under her own foreclosure. This equity it must be remembered is based upon the valuation of an expert, called by the defendants, estimated three years after the sale. We realize that we have no power to review the facts and that an order, setting aside a sale, may be discretionary, but we state these facts in order to empha-

size the point of law that the judgment ordering a resale
was error under the circumstances of this case and the
direction of the Appellate Division. The trial justice
with a worthy solicitude for the welfare of the infant
defendants did not confirm the prior sale but in his
judgment set it aside and directed a resale of the property
as of the date of his decree unless the defendants redeemed
the property within ten days thereafter by paying to
the plaintiff the full amount of the mortgage debt with
interest. He also required the plaintiff to account for
all the rents and profits received from the property since
the previous sale in 1915 and made no provision for the
Johnston mortgage except as I shall now state. The
Johnston mortgage of $3,000 was given by the plaintiff
and her husband after their purchase upon the foreclosure
sale. There is no question about this Johnston mortgage.
It is a good and valid first mortgage lien. It is, however,
subsequent to the plaintiff's mortgage and to this fore-
closure action which was commenced February 8, 1915.
The Johnston mortgage was given May 1, 1916. The
present judgment apparently directs that this Johnston
mortgage be paid out of the proceeds left after the pay-
ment of the plaintiff's mortgage, whereas $2,500 of the
Johnston mortgage money was used to pay off the first
mortgage which was a lien upon the property prior to
the one being foreclosed. Johnston was not a party
to this proceeding and there is nothing in the record to
show that his mortgage is due. No doubt it is due, and
no doubt he would be willing to take his $3,000 with
interest but on the other hand his mortgage may have
been extended for a definite unexpired period. Under
these circumstances there is no power in the court to
direct him to take his money before it is due. Again
there is no provision made in this judgment for the
payment or allowance to the plaintiff of the costs and
expenses of the prior foreclosure and sale. The good
faith of the plaintiff in conducting such foreclosure pro-

1923.]  Opinion, per CRANE, J.  [235 N. Y. 232]

ceedings and buying in the property has not been questioned. There is no reason that I can see why she should be charged with these amounts.

All of this has been said by me to bring to our attention the meaning of the order of the Appellate Division which permitted the defendant Santoro to file an answer and present her defense. That order, as I have stated, directed that the prior judgment proceedings including the sale should stand until the determination of that issue. This meant in my judgment, and the legal effect of such order was, that the judgment and sale should finally stand unless some issue raised by the defendant's answer found in her favor required a modification. Unless this is the meaning of the condition in the order, it is altogether meaningless. The mortgage was sufficient security. There is no occasion for the judgment to stand as security unless it was intended that the proceedings should not be vacated and set aside unless some issue raised by the defendant necessitated or required such action. (*McCall* v. *McCail*, 54 N. Y. 541; *Denton* v. *Noyes*, 6 Johns. 296; *Flake* v. *Van Wagenen*, 54 N. Y. 25.) In *Winer* v. *Mast* (146 Ind. 177) it was said: " The only difference between setting aside a decree, and opening it up in order to let a party in to defend, is that in the former case the decree is at once annulled, while in the latter it is permitted to stand with all the proceedings thereunder stayed, until the court may determine whether the defense is good or not. If the defense fails the judgment is confirmed; if the defense succeeds a new judgment takes the place of the original." (See, also, *Dulle* v. *Lally*, 167 Ill. 485; *Parszyk* v. *Mach*, 10 S. D. 555; *Huston Township Ins. Co.* v. *Beale*, 110 Penn. St. 321; *Smith* v. *DeLanty*, 11 Wash. 386.)

The effect of an order opening a default and directing that a judgment stand as security depends somewhat upon the nature of the case and of the judgment. The facts in the cases cited by the respondent (*Pomeroy* v.

*Hocking Valley Ry. Co.*, 187 App. Div. 158; *Negley* v. *Counting Room Co.*, 2 How. Pr. [N. S.] 237) are dissimilar from those here, and render them inapplicable. There is in this case nothing to be done under our ruling by the final judgment that was not fully and legally done by and under the prior judgment. There is no purpose to be gained in setting it aside and directing a resale.

The judgment appealed from should, therefore, be modified in accordance with opinion so as to confirm original judgment and by striking out other provisions, without costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, Mc-LAUGHLIN and ANDREWS, JJ., concur.

Judgment accordingly.